UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MANCHESTER ESSEX REGIONAL SCHOOL DISTRICT SCHOOL COMMITTEE<br>Plaintiff<br><br>v.<br><br><br>BUREAU OF SPECIAL EDUCATION APPEALS of the MASSACHUSETTS DEPARTMENT OF EDUCATION, MASSACHUSETTS DEPARTMENT OF EDUCATION, and PATRICIA SPELLMAN as Parent and Next Friend of D.T.<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No.<br>)    05-10922-NMG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

**STATEMENT OF THE CASE**

This is a case in which the Manchester Essex Regional School Committee

("Manchester Essex" or "District") seeks judicial review pursuant to 20

U.S.C.§1415(1)(2) of a final decision issued by the Bureau of Special Education Appeals

of the Massachusetts Department of Education. It is the position of Manchester Essex that

the decision was contrary to law, unsupported by the weight of the evidence and

contained significant errors. Those errors include the Hearing Officer's ordering

Manchester Essex to fund a twelve-week trial in the "nature of an extended evaluation" at

an unlicensed, unapproved and unaccredited program called Active Healing in direct

violation of the Individuals with Disabilities Education Act, and federal and state

regulations that require services and evaluations by "qualified personnel."

Additionally, where there was no relevant, reliable or credible evidence demonstrating any "effective results" or "demonstrable improvement" in the student's educational performance as a result of her enrollment in Active Healing, the Hearing Officer erred in failing to find in favor of the District.   In reaching her decision, the Hearing Officer relied on irrelevant facts and incompetent evidence, failed to adhere to the identified issues and improperly applied the law. In light of the lack of evidence as to the appropriateness of the program, the Hearing Officer should have found in favor of the District and her failure to do so is error and warrants summary judgment in the Plaintiff's favor.

Finally, the Hearing Officer's decision should be set aside because this underlying dispute arises out of questions regarding the most appropriate method for administering the student's therapies and, as a matter of law, questions of methodology must be resolved in favor of the school district.

## ARGUMENT

### I.    THE STANDARD OF JUDICIAL REVIEW

The Individuals with Disabilities Education Act ("IDEA") provides that in actions involving appeals from administrative decisions, a federal district court (i) shall receive the records of the administrative proceeding; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. 20 U.S.C. §1415 (i)(1)(C).   The First Circuit Court of Appeals has interpreted the statutory language of the IDEA to require:

2

> an intermediary standard of review . . . a standard which,
> because it is characterized  by independence of judgment,
> requires a more critical appraisal of the agency
> determination than clear-error review entails, but which,
> nevertheless, falls well short of complete de novo review.

*Shawsheen Valley Reg. Tech. Sch. v. Com.*, 367 F. Supp. 2d 44, 49 (D. Mass. 2005)

(citing *Lenn v. Portland Sch. Comm.*, 998 F. 2d 1083, 1086 (1st Cir. 1993)).  A federal

trial court,

> in recognition of the expertise of the administrative agency,
> must consider the agency's findings carefully and endeavor
> to respond to the hearing officer's resolution of each
> material issue.  After such consideration, the court is free to
> accept or reject the findings in part or in whole.

*Id.* (citing *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 792 (1st Cir. 1984), *aff'd*,

471 U.S. 359 (1985)).  The agency's legal conclusions, however, are subject to de novo

review. *Id.* (citing *Ross v. Framingham Sch. Comm.*, 44 F.Supp.2d 104, 111 (D. Mass.

1999)).[1]

II.    THE HEARING OFFICER ERRED IN ORDERING A TWELVE WEEK TRIAL
       AT ACTIVE HEALING BECAUSE THE IDEA REQUIRES SERVICES AND
       EVALUATIONS FROM QUALIFIED PERSONNEL.

The IDEA, 20 U.S.C. §1400 et seq., is a spending clause statute that seeks to

ensure that "all children with disabilities have available to them a free and appropriate

education."  Schaffer v. Weast, --U.S. --, --, 126 S.Ct. 528, 531 (2005)(citing 20 U.S.C.

---

[1]    Although this case involves services ordered for and received during the summer of 2005, this case is not moot.  The federal courts have recognized that IDEA controversies are likely to evade review because the "administration and judicial review of an IEP is 'ponderous' and usually will not be complete until a year after the IEP has expired." *Daniel R.R.*, 874 F.2d 1036, 1041 (5th Cir. 1989)(finding dispute would be an issue every time the school district prepares a new placement or IEP or proposes to change an existing one).  Fundamental disputes over the correct interpretation of the IDEA as to a particular student are "capable of repetition as to the parties before it yet evading review." *See Rome Sch. Com. v. Mrs. B.*, 247 F.3d 29, 32 (1st Cir. 2001) (citing *Board of Educ. v. Rowley*, 458 U.S. 176, 186 n.9 (1982)).  Here, the issue capable of repetition is whether a district must provide services from a provider that is unapproved, unlicensed and unaccredited.

3

§1400(d)(1)(A)).   Under the IDEA, school districts must create an "individualized education program" (IEP) for each disabled child. Id. (citing §1414(d)).

Local educational authorities must identify and evaluate disabled children, develop an IEP for each one, and review every IEP at least once a year. Id. at --, 126 S.Ct. at 532. Each IEP must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide. Id.

Parents must be informed about and consent to evaluations of their child. Id. They have the right to examine any records relating to their child and to obtain an "independent educational evaluation of the[ir] child. Id. (citing §1414(c)(3) and §1414(d)(1)(B)). They must be given written notice of any changes in an IEP and be notified in writing of the procedural safeguards available to them under the Act. Id. (citing §1415(b)(3) and §1415 (d)(1)). If parents believe that an IEP is not appropriate, they have the right to an administrative "impartial due process hearing." Id. (citing §1415(f)).

Among its many provisions, the IDEA requires that educational services be provided by "qualified personnel." 20 U.S.C. §1412 (a)(14)(A); 34 C.F.R. §300.23. Under federal law, "qualified personnel" means "personnel who have met SEA-approved or SEA-recognized certification, licensing, registration, or other comparable requirements that apply to the area in which the individuals are providing special education or related services." 34 C.F.R. §300.23.   As a condition for being eligible for assistance from the federal government, state educational agencies must establish and maintain qualifications

4

to ensure that personnel are appropriately and adequately prepared and trained. 20 U.S.C. §1412 (a)(14)(A).

Under federal law, each state is responsible for determining the "specific occupational categories required to provide special education and related services within the State." 34 C.F.R. §300.136(b)(2). With respect to related services, each state must ensure that related services personnel who deliver services in their discipline or profession have "State-approved or State-recognized certification, licensing, registration, or other comparable requirements that apply to the professional discipline in which those personnel are providing special education or related services." 34 C.F.R. §300(b)(1)(i)(ii).

In the present case, it was stipulated between the parties at hearing and therefore not in dispute that Sargent Goodchild had no degree or certification in any field related to special education, occupational or speech therapy, or any other field related to special education, health or rehabilitation. AR at 38. It also was not disputed that Active Healing was not a Chapter 766 approved or otherwise licensed or accredited program. Id. It is clear that Active Healing and/or Sargent Goodchild cannot satisfy the "qualified personnel" requirement of the IDEA and therefore the Hearing Officer's Order requiring Manchester Essex to fund a twelve week trial program at Active Healing was contrary to federal and state law.[2]

The Hearing Officer fashioned her Order "in the nature of an extended evaluation." AR at 48. In Massachusetts, state regulations provide for an "extended

---

[2] The Hearing Officer's decision stated, "I note that it is highly unusual to order a trial of an unapproved program such as Active Healing, and is here dictated by the unique circumstances of this case." AR at 48. Neither the IDEA nor federal or state regulations, however, provide an exception to the "qualified personnel" requirement on the basis of "unique circumstances" and therefore the Hearing Officer's reliance on "unique circumstances" was not warranted and an error of law.

evaluation" period as a means of further assessment if *the Team* finds the information received from an initial evaluation is insufficient to develop an IEP. 603 C.M.R. 28.05(2)(b) (emphasis added). It was the Hearing Officer's reasoning that a twelve week trial, "should inform the parties further on the issue of whether the Active Healing program will meet Student's needs, particularly if appropriate evaluations and observations are conducted." AR at 48.

Although the hearing officer has the authority under 603 CMR 28.08(5) "to order additional evaluations by the school district or independent evaluations at public expense when necessary in order to determine the appropriate special education for the student . . .", in this case, the hearing officer's order was in error. In conducting assessments and evaluations, state regulations provide that school districts must "ensure that appropriately credentialed and trained specialists administer all assessments." 603 CMR 28.04(2). Likewise, federal law requires that all assessments and evaluations must be "administered by trained and knowledgeable personnel." 20 U.S.C. §1414(a)(3). Here, the hearing officer ordered the twelve week trial so that "appropriate evaluations and observations" could be conducted. As a matter of law, however, Active Healing and/or Sargent Goodchild cannot produce "appropriate evaluations" because they are not qualified to do so under the IDEA. Accordingly, the Order must be set aside as contrary to state and federal law.[3]

Furthermore, the Order "in the nature of an extended evaluation" was also inappropriate for the reason that extended evaluations are reserved for situations where there is a team determination that its information is insufficient. Here, there was no

---

[3] Interestingly, the IDEA 2004, which took effect in Massachusetts in July of 2005, added new language requiring that a student's special education and related services must be "based on peer-reviewed research to the extent practicable." 20 U.S.C. §1414(d)(1)(A)(i)(IV).

6

determination that the available information was insufficient; to the contrary, the Team considered all available and pertinent information and concluded that the Active Healing program was neither necessary nor appropriate to provide the student with a free appropriate public education. AR at 230. Finally, the applicable regulation states that an "extended evaluation may extend longer than one week, but shall not exceed eight school weeks." 603 CMR 28.05 (2)(b)(4). The Hearing Officer's Order was for twelve weeks and, again, contrary to state law.

III.    THE HEARING OFFICER'S FAILURE TO FIND IN FAVOR OF THE DISTRICT WAS ERROR BECAUSE THERE WAS NO CREDIBLE EVIDENCE OF A BENEFIT OR OF THE APPROPRIATENESS OF THE PROGRAM

At the outset of the Hearing Officer's decision, she states that the issue for hearing was "[w]hether Manchester-Essex must provide Student with several hours per week of the Active Healing program during the 2004-2005 school year in order to provide her with a free, appropriate public education." AR at 35. The Hearing Officer began her analysis by setting forth the standard for FAPE. AR at 44. She correctly stated that federal courts have interpreted FAPE to mean an IEP and services that provide "significant learning" and confer "meaningful benefit" on the student via "personalized instruction with sufficient support services to permit the child to benefit educationally." *See id.* (citing *Hendrick Hudson Bd. of Educ. v. Rowley*, 458 U.S.176, 188-189, 203 (1992)). The IEP must be "reasonably calculated to provide 'effective results' and 'demonstrable improvement' in the educational and personal skills identified as special needs." *See id.* (citing *Lenn v. Portland School Committee*, 998 F.2d 1083 (1st Cir. 1993); *Roland M. v. Concord School Committee*, 910 F. 2d 983 (1st Cir. 1990), *cert. denied*, 499

7

U.S. 912 (1991); *Burlington v. Mass. Dept of Educ.*, 736 F.2d. 773, 788 (1st Cir. 1984).

The hearing officer then states another standard:

> this situation can be viewed as similar to one in which the parent uses self-help, i.e. unilaterally places a child in an approved (or unapproved) program because the school has not offered an appropriate IEP, and so is potentially entitled to reimbursement for the costs of such self-help. [citations omitted] To qualify for reimbursement, a parents' placement need only be 'appropriately responsive to [a student's] special needs;" so that the student can benefit educationally.

AR at 47.

In the present case, there was no self-help and the hearing officer's application of the unilateral placement standard is in error. Under either standard, however, the Parent produced no credible evidence as to the appropriateness of the program or as to any benefit allegedly conferred upon the student.

As the party requesting the hearing, the Student's mother had the burden of proof at the hearing. *See Schaffer v. Weast*, -- U.S.--, --, 126 S.Ct. 528, 534 (2005)(stating party challenging IEP has burden of proof at hearing). It is clear in this instance that the Parent did not meet that burden. In ordering a twelve-week trial "in the nature of an extended evaluation", the Hearing Officer admits that there was insufficient evidence showing that Active Healing was appropriate. See 603 CMR 28.05 (2)(b) (providing for an extended evaluation period if the Team finds the information obtained from an initial evaluation insufficient to develop an IEP). The hearing officer should have found in favor of the District not only because the program proposed by the mother did not meet "qualified personnel" standards, but because the Parent did not present sufficient evidence on the issue of whether Active Healing was appropriate and benefited the student. Although it is

8

within the Hearing Officer's authority to order additional evaluations, in this instance, it was an abuse of the Hearing Officer's discretion to order an "extended evaluation" with an unlicensed provider in lieu of making a finding based upon the evidence, on whether the proposed program at Active Healing was appropriate.

IV.   THE HEARING OFFICER'S DECISION SHOULD BE SET ASIDE BECAUSE IT IS BASED ON IRRELEVENT FACTS AND ERRORS OF LAW.

In crafting the order, the hearing officer gives weight to what she refers to as Manchester Essex's past "endorsement" of the Active Healing program.  The hearing officer states, "[t]he School's argument that the BSEA should not put its imprimature on an unapproved, unaccredited program in the absence of any expert testimony whatsoever as to that program's appropriateness or benefit to the student is very persuasive . . ." She goes on to say, however,

> "On the other hand, it seems manifestly unfair to penalize the Mother now for relying on the School's longstanding past endorsement of the Active Healing program in the form of payment for summer programming, consultation with Sargent Goodchild and adoption of methodologies, particularly where the school had not offered other extended year services, cannot point to evaluations of its own that show that the Active Healing program to be inappropriate; where at least some of the Active Healing methodologies are the same or similar to standard OT or PT techniques; and where contemporaneous progress reports from more than one provider state that the Student benefited from the Active Healing interventions."

AR at 47.  Examination of the facts and issues shows that the Hearing Officer's reasons were contrary to law and unsupported by the evidence.

(A) Consideration of funding of summer program irrelevant

Although Manchester Essex had funded *summer* programs at Active Healing based upon parental request, the disputed issue that brought this matter to hearing was

Manchester Essex' refusal to provide services at Active Healing during the regular school year as part of the Student's regular school day. Manchester Essex never endorsed enrolling the student in Active Healing as a component of the student's regular school year. The Office of Special Education Programs (OSEP) recognizes that summer, or Extended School Year (ESY), services "will probably differ from the child's regular IEP, since the purpose of the ESY program is to prevent regression and recoupment problems." *Letter to Myers*, 16 IDELR 290 (1989). O SEP recognizes that ESY services may differ from the regular school year because "ESY services are provided during a period of time when the full continuum of alternative placements is not normally available for any students [and] the Department does not require States to ensure that a full continuum of placements is available solely for the purpose of providing ESY services." *Id*. The Hearing Officer therefore erred in finding that the District's funding of Active Healing as a summer program is an "endorsement" of the program as a component of the regular school year program.

(B) Consultation with Sargent Goodchild; adoption of methodologies

Manchester Essex's limited consultation with Sargent Goodchild in 2001 is not contrary to its position that Active Healing was not appropriate for the Student during the 2004-2005 school year as part of her regular school year programming. As testified to by the district's physical and occupational therapists, Active Healing's "patterning" techniques were similar in certain limited areas to therapies traditionally employed by occupational and physical therapists. Although the Student's school therapists may have incorporated "patterning" techniques, the techniques were those they determined to be similar to accepted practices in their therapy areas, and those therapies were administered

10

by the District's licensed and registered professionals in accordance with their training and experience. Record Transcript at 86 and 115. Other techniques used by Active Healing which the district's therapists found to be contraindicated were not incorporated into the student's school based occupational and physical therapy based on the therapist's conclusions that such recommended practices could actually be harmful to the child. Record Transcript at 76, 93 and 116.

      (C) The school had not offered other extended year services

      The hearing officer gave the District's "endorsement" of Active Healing undue weight "particularly where the School had not offered other extended year services." Again, the issue for hearing, as specifically stated by the hearing officer and agreed to by parties, was limited to whether Active Healing ought to be incorporated into the Students' program three days per week during the regular school year. Thus, there should have been no consideration whatsoever to whether other programs or services could be appropriate for the child; the only issue to be considered was the requested addition of Active Healing services. The Hearing Officer's consideration of whether the District had offered other extended year or therapeutic services was clearly not relevant to the determination of that issue, and improperly penalized the District for adhering to the stated issues at hearing.

      (D) The District cannot point to evaluations of its own to show that Active Healing program is inappropriate.

      Here, the hearing officer errs in placing an affirmative obligation on the District to show that Active Healing is inappropriate. As the party requesting the hearing, the mother had the burden of proof at hearing. See *Schaffer v. Weast*, -- U.S.--, --, 126 S.Ct. 528, 534 (2005)(stating party challenging IEP has burden of proof at hearing). It was for

11

the Parent, therefore, to show that Active Healing was appropriate. As such, it was error for the hearing officer to place an obligation on the district to "point to an evaluation of its own" as to the inappropriateness of the program.

Moreover, even if it was appropriate for the Hearing Officer to shift the burden to the District, the Hearing Officer inexplicably completely disregarded the testimony from Joseph Mascola, Manchester Essex's Director of Special Education, in which he testified as to his observations of the Active Healing program and the blatant inappropriateness of the program for the Student. Although not a formal "evaluation", his testimony concerning his observations of Sargent Goodchild's assessment was uncontradicted evidence of the inappropriateness of the program, and revealed the bizarre nature of the alleged treatment program and the specious nature of the alleged evidence of progress made by the student.

(E) Penalty to mother

It is error for the hearing officer to consider that "it seems manifestly unfair to penalize Mother now for relying on the school's long standing past endorsement of the Active Healing program . . ." Although the IDEA affords parents certain rights and participation in the team process, it is error for the hearing officer to find that because a service was provided in the past, the parent is entitled to have the child receive that service year after year even if the Team determines that it is no longer appropriate. It was error for the hearing officer to consider her perception that the District's position penalizes the mother especially in light of the complete lack of credible evidence concerning the appropriateness of the disputed program.

(F) Contemporaneous progress reports from more than one provider stating that the Student benefited from Active Healing.

12

Although the hearing officer inexplicably found some evidence of a benefit conferred on the Student by Active Healing, this court is nevertheless "free to accept or reject the findings in part or in whole." *Shawsheen Valley Regional Sch. Dist. v. Com,* (citing *Town of Burlington v. Dep't of Educ.,* 736 F. 2d 773, 792 (1st Cir. 1984), aff'd, 471 U.S. 359 (1985)).  Here, there was no credible evidence of a benefit conferred and the hearing officer's finding ought to be set aside.  The hearing officer describes only one progress report from April of 2001 in which the district's physical therapist, Jennifer Gallant, stated, "[Student] also attended the [Active Healing] program . . . for her summer school last year  . . . this program was very beneficial for [Student] and the progress seen in her eye contact and tracking skill were notable." AR at 39.  Otherwise the record is entirely without any evidence that Active Healing benefited the Student in any manner at the time of the hearing.

Further, the parent offered no testimony with respect to any benefit demonstrably conferred.  To the contrary, the district offered testimony from Jane Clark, the student's liaison for five years and a certified special education teacher, that she did not believe the Student benefited from Active Healing or that it was appropriate. Record Transcript, Volume I, at 39, 50, 61, and 66.   Although Jane Clark testified that at the beginning of the Student's third grade year that she supported the Student's attendance out of frustration for the lack of any other acceptable program, she no longer held that opinion. Id. at 38-39.  Ms. Clark testified that she believed Active Healing was not appropriate. Id. at 66.  She stated that "I have not in the past year, two years, seen any carry over into her daily inclusion in the classroom. I have not seen it." Id. at 39.  See also id. at 50, 61, 66.

13

The Parent submitted minimal documentation in support of her case. AR at 51-186. First, the Parent relied on documentation authored by Sargent Goodchild in which he subjectively and in a self-serving manner claimed the Student progressed while attending his Active Healing program. AR at 65-66, 78. Sargent Goodchild, however, is not licensed or certified in any field related to special education, physical, occupational or speech therapy, or any other education, health or rehabilitative field. Given the IDEA's emphasis on qualified personnel as explained above, and state and federal law that requires that only properly credentialed persons perform assessments and evaluation, Sargent Goodchild's reports are not reliable or credible and should not be given any weight. [4]

The Parent also submitted a letter from the Student's pediatrician, Karl Kuban, M.D., in which he states his support for the mother's request for Active Healing services. AR at 53. As noted by the hearing officer, the letter makes clear that the pediatrician based his opinion on information provided to him by the mother and Dr. Kuban did not formally evaluate the Student, speak to any service providers at Manchester Essex, or observe the child at either Manchester Essex or at Active Healing. Record Transcript, Vol. I, at 136; AR at 53.

Finally, the Parent offered a letter from the Student's assistant, Kathyrn Cushna, in which she suggests that the Student would benefit from Active Healing. Id. at 54. In testimony, however, Ms Cushna admitted that she has no training or degree or licenses in

_____

[4] Such a requirement is clearly demonstrated as being necessary and appropriate when considering Mr. Goodchild's evaluation of the Student's neurological age. Despite his lack of education, training, certification or licensure, Mr. Goodchild purported to be able to measure the Student's neurological age to within one one-hundreth of a month. See AR at 82-90 (Goodchild's evaluation of Student's chronological versus neurological age). Based on a 31day month, Mr. Goodchild therefore believes that he can assess a child's neurological age to within - 7 hours and 26 minutes of the brains developmental stage.

14

any area that would qualify her to assess the benefits of Active Healing or measure progress in any area. Record Transcript, Volume II, at 12-22. The mother did not submit any documentation or testimony by a qualified expert on the issue of whether Active Healing is appropriate for the Student or confers a benefit to the Student. In light of the lack of reliable and/or credible evidence as to the appropriateness of the program, the Hearing Officer should have found in favor of the District and her failure to do so is error and warrants summary judgment in the Plaintiff's favor.

## V.    QUESTIONS OF METHODOLOGY MUST BE RESOLVED IN FAVOR OF THE DISTRICT

Even if this court finds that it was permissible for the hearing officer to order the District to fund an unapproved, unaccredited program by an unlicensed provider in contravention of existing laws and regulations; and that there is somehow evidence of a benefit to the student, this Court should find that the Hearing Officer's Order was in error because the dispute was essentially one of methodology and courts must grant substantial deference to the decisions of local school officials on questions of methodology. *Lachman v. Illinois State Bd. of Educ.*, 852 F.2d 290, 297 (7th Cir. 1988).

In *Lachman v. Illinois State Bd. of Educ.*, 852 F.2d 290 (7th Cir. 1988), the leading case on methodology, the court stated that where the dispute boils down to the most appropriate method to facilitate a student's special education,

> courts must be careful to avoid imposing their view of preferable education methods. The primary responsibility for formulating the education to be accorded to a disabled child and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local agencies in cooperation with the parents and guardians of the child . . .[I]t seems highly unlikely that

15

> Congress intended courts to overturn a State's choice of appropriate educational theories . . .

*See id.* at 297 (citing *Rowley*, 458 U.S. at 207-08). "Rowley and its progeny leave no doubt that parents, no matter how well-motivated, do not have a right under the [IDEA} to compel a school district to provide a specific program or employ a specific methodology in providing for the education of their handicapped child." *See id.* (citing *Rowley* and cases following *Rowley*).

In *Roland M. v. Concord School Committee*, 910 F.2d 983, 992 (1st Cir. 1990), cert. denied, 499 U.S. 912 (1991), the First Circuit cited to *Lachman* and *Rowley,* and stated

> Beyond the broad questions of a student's general capabilities and whether an educational plan identifies and addresses his or her basic needs, courts should be loathe to intrude very far into interstitial details or to become embroiled in captious disputes as to the precise efficacy of different instructional programs.

Applying that standard to this case, the Hearing Officer was compelled to find in favor of the District. The disagreement between the Parent and the District essentially centers on the most appropriate method for administering the Student's therapies; whether the District must add a non-approved allegedly therapeutic program operated by a non-licensed and untrained political science major. Here, the parent did not question the sufficiency of the IEP, only the District's refusal to provide additional services at Active Healing. As long as the District met the requirements of the IDEA, and here there was no evidence that the District had not met those requirements, the Hearing Officer should have resolved the dispute as to the appropriate methodology to employ in favor of the District.

16

WHEREFORE the Manchester Essex Regional School District respectfully requests that this court grant its motion for summary judgment.

Date: February 28, 2006                    Respectfully submitted,

                                           The Plaintiff,

                                           Manchester Essex Regional School District

                                           By its attorneys,

                                           SULLIVAN & NUTTALL, P.C.


                                           */s/ Thomas J. Nuttall*
                                           _____
                                           Thomas J. Nuttall
                                           BBO No.: 546940
                                           1020 Plain Street, Suite 270
                                           Marshfield, MA  02050
                                           (781) 837-7428

17

<u>Certificate of Service</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

Date: February 28, 2006                    */s/Thomas J. Nuttall*
                                          _____
                                          Thomas J. Nuttall

18