UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE
2006 APR -7 P 1:04
U.S. DISTRICT COURT
DISTRICT OF MASS.

MANCHESTER-ESSEX REGIONAL SCHOOL )
COMMITTEE, )
        Plaintiff, )
 )
v. ) CIVIL ACTION NO.
 ) 05-10922-NMG
BUREAU OF SPECIAL EDUCATION APPEALS )
OF THE MASSACHUSETTS DEPARTMENT )
OF EDUCATION, MASSACHUSETTS )
DEPARTMENT OF EDUCATION, and PATRICIA )
SPELLMAN, as Parent and Next Friend of D.T. )
        Defendants, )

<u>DEFENDANT PATRICIA SPELLMAN, as parent and Next Friend of D.T.
MEMORANDUM IN OPPOSITION OF MOTION FOR SUMMARY JUDGMENT</u>

    Defendant Patricia Spellman (hereinafter the "Parent") suggests that the Plaintiff Manchester-Essex Regional School Committee (hereinafter "School District") argument for summary judgment fails on several bases, and that this court should uphold the Bureau of Special Education Appeals (hereinafter the "Bureau") ruling to allowing a twelve week extended evaluation of to determine the efficacy of the Active Healing program for the child D.T. Their argument fails because there was ample precedent for this unique student to explore non-traditional alternatives for education and secondly, the matter is moot.

    First, the Active Healing Program, while not a program that fit the traditional definition of services and evaluations done by "qualified personnel," was a program that had provided this child with services for four years and four summers prior to the parent requesting additional services to be formally incorporated into the child's school year

1

IEP.[1] It is undeniable that from the time the child was in Kindergarten until fourth grade, the child attended the Active Healing program for seven weeks during the summer, paid for, without complaint by the School District. Plaintiff's Facts, paragraph 6, 9. At the conclusion of those summer sessions, Active Healing provided a summary of their results, none of which was ever challenged by the School District. Plaintiff's Facts, paragraph 10. The progress made by the child during the summer was significant enough that the School District incorporated several of the Active Healing techniques into the child's public school program. Plaintiff's Facts, paragraph 11.

Unfortunately, the child suffered from a series of epileptic seizures and it appeared that there was a loss of previously learned skills. Plaintiff's facts, paragraph 12. Despite the setback, the child continued to attend Active Healing during the summer time, and again, there was documentation of improvement, again, none of which was challenged by the School District. Plaintiff's Facts, paragraph 13.

During the child's fourth grade year, the Active Healing modalities were discontinued in the classroom setting, although the child continued in the Active Healing program during the summer. Again, the School District did not refuse to pay or otherwise desire to negotiate any payment for services rendered by Active Healing. The School District had never challenged whether Active Healing provided "qualified personnel" or was appropriately licensed.

---

[1] 34 C.F.R. §300(b)(1)(i)(ii) requires that service personnel who deliver services have "state approved or state recognized certification, licensing, registration *or other comparable requirements* that apply to the professional discipline in which those personnel are providing special education or related services." There was no testimony or evidence that Active Healing did not meet "other comparable requirements", as the evidence was that although the executive director lacked professional credentials, the members of the Board of Directors clearly did.

Case 1:05-cv-10922-NMG   Document 24   Filed 04/07/2006   Page 3 of 6

During the fourth grade year, the child made little if any progress. Her education and therapeutic providers agreed that D.T. seemed to be regressing and that they were frustrated by her lack of improvement.. Defendant Spellman's Supplemental Statement of Material Facts, paragraph 2. The Parent determined that the only difference between that year and prior years, is that the Active Healing modalities had been previously incorporated into her daily school year program had been discontinued. Plaintiff's Facts, paragraph 17.

For the child's next IEP, the Parent requested that the Active Healing program not only be returned to the child's IEP, but that the child be transported to Active Healing three hours a day as part of her normal school day therapies. The School District declined and the appeal to the Bureau occurred.

The Bureau *did not* grant the Parent's request to incorporate Active Healing into the child's IEP. The Bureau after weighing the evidence before it, wanted more information, and by allowing a twelve week extended evaluation the Bureau allowed the parties to determine in a more than anecdotal manner, a means of identifying whether the Active Healing program provided a substantial benefit to this child.[2] This extended evaluation period was ordered to determine whether the parent's contentions were accurate, that Active Healing provided measurable educational gains, or whether the school district was correct, that there would not be measurable gains. It could also be that with this unique child, any program that demonstrated even slight improvements was worth a chance

---

[2] 603 C.M.R. §28.05(b)(4) provides for an evaluation not longer than eight *school* weeks, and is silent on the issue of an evaluation that takes place overlapping the school year and summer time period.

3

There was sufficient testimony that the child had profound disabilities. At age 11 years old, the major dispute was whether she was functioning at a *six month* old level, or a *nine month old* level. Clearly, this, as noted by the examiner, was a unique circumstance. The level of functioning of this child was so low, and the needs so great, as stated by her principal teacher, "I supported her going out there [to Active Healing] out of frustration for lack of any other program that was acceptable. She was regressing, and frankly you know I think the whole team was being very frustrated by her regression and we were doing all of the therapies that were in her IEP and we were still seeing regression." In terms of developing an appropriate IEP, it is clear that the Team had difficulty in trying to keep to their mandate of maintaining the child in the public school setting.

Given the fact that Active Healing had provided services in the past, that those services had been identified as providing some functional improvement to the child, the Hearing Officer's decision to have an organized twelve week trial in the nature of an extended evaluation was not inappropriate. The Hearing Examiner did not unequivocally accept the parent's request to provide three hours a day of Active Healing services. Given the profound difficulties this child had, it was not unreasonable to consider all alternative placements. See *Letter to Myers,* 16 IDELR 290 (1989). At the end of the twelve week period, it was the Plaintiff's plan, with the Parent's agreement, to have the child undergo a series of evaluations to determine whether the Active Healing program was providing a measurable benefit. The Parent was agreeable that if there were no measurable gains, she would withdraw all further requests to use Active Healing.[3] The Parent contends that the evaluations were never completed, but again, the issue of whether the evaluation period

---

[3] The parties engaged in settlement discussions prior to the filing of this Administrative Appeal.

supported or not supported the use of Active Healing for this child became moot, as the child was removed from the public school setting and attends school at North Shore Education Consortium, Beverly, Massachusetts.[4]

Whether Active Healing is, or did, provide a benefit to the student is now irrelevant, and moot. The twelve week trial period ended without the evaluations being conducted, due to the fact that the child was removed from the educational setting. Now, the child's IEP states:

> "It was noted that [D.T.] demonstrates delays in cognitive and neuromotor areas, poor vision and limited eye muscle tome, limited range of motion, developmental levels at the 0-6 month levels, preintentional communication skills, sensorimotor deficits, self-help limitations, deficits in motor functioning, health and developmental delays, intellectual and neurological limitations, sensory, communication and physical limitations, inability to express herself, inability to process information , lack of awareness of curricular materials. …It is not appropriate to consider the Essex Elementary general education program as appropriate for D.T. It is not able to provide a developmental appropriate program, activities and therapies. The general education structure does not allow enough time and resources to be focused on Danielle's specific needs and goals."

In summary, it is clear that the Hearing Officer did not grant the Parent's request to incorporate Active Healing into the child's IEP, only that the Hearing Officer ordered an extended twelve week evaluation period. The Hearing Officer was clearly within her bounds to fashion such a remedy. The issue surrounding this very unique student using unlicensed and unapproved therapeutic modalities to improve the quality of her life, is moot, as the child is no longer in the public school system.

## CONCLUSION

---

[4] It should be noted that many of the therapeutic modalities recommended by Active Healing, including vision therapy, gait therapy and patterning, are employed at her new educational setting.

For the above stated reasons, this Court should deny the Plaintiff's Motion for Summary Judgment and uphold the Bureau of Special Education Appeals decision to allow a twelve week extended trial, consistent with 603 C.M.R. 28.05(2)(b).

Dated: April 6, 2006

Respectfully submitted,

PATRICIA SPELLMAN

By her attorney,

*[signature]*
Sharon D. Meyers
BBO#344680
Meyers & Welch
70 Washington Street, Suite 402
Salem, MA 01970
(978) 745-0575

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document has been served by first class mail to all attorneys of record, first class, postage prepaid.

Dated: April 6, 2006

*[signature]*
Sharon D. Meyers