**United States District Court**
**District of Massachusetts**

```
                                    )
MANCHESTER-ESSEX REGIONAL SCHOOL )
DISTRICT SCHOOL COMMITTEE,          )
            Plaintiff,              )
                                    )    Civil Action No.
            v.                      )    05-10922-NMG
                                    )
BUREAU OF SPECIAL EDUCATION         )
APPEALS OF THE MASSACHUSETTS        )
DEPARTMENT OF EDUCATION,            )
MASSACHUSETTS DEPARTMENT OF         )
EDUCATION, AND PATRICIA SPELLMAN )
AS PARENT AND NEXT FRIEND OF        )
D.T.,                               )
            Defendants.             )
                                    )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

On May 4, 2005, the Manchester-Essex Regional School
District School Committee ("the School District") filed a
complaint in this Court against the Bureau of Special Education
Appeals ("the Bureau"), the Massachusetts Department of Education
("MDE") and Patricia Spellman ("Spellman"), the mother of D.T., a
student in the plaintiff's School District. The complaint
alleges that the Bureau violated the Individuals with
Disabilities Education Act ("IDEA" or "the Act"), 20 U.S.C. §
1400 et seq, when it ordered the School District to pay for D.T.
to attend a twelve-week evaluation at Active Healing, Inc.
("Active Healing"), a special educational program not under the

-1-

plaintiff's control. The School District seeks, among other things, a reversal of the Bureau's order. The School District now moves for summary judgment as well as to strike defendant Spellman's opposition to its motion. Having considered the memoranda in support of and in opposition to the pending motions, the Court rules as follows.

## I.   **Background**

### A.   **Facts**

At the time of the Bureau's order, D.T. was an eleven-year-old student who suffered from a chromosomal abnormality known as Wolf-Hirschorn Syndrome. D.T. suffers from severe cognitive and mobility impairments, she requires nutritional assistance via a tube and she cannot speak, although through vocalization she can convey pleasure or discomfort. Her educational and developmental progress since entering school have been slow. At all times relevant to this litigation, D.T. was a special education student at Essex Elementary and Middle School.

Beginning in 2000 after D.T.'s kindergarten year, the School District paid for D.T. to attend Active Healing for seven weeks each summer. Active Healing, run by Sargent Goodchild ("Goodchild"), provides developmental and cognitive assistance to children with learning disabilities and/or brain damage. There is some evidence in the record suggesting that D.T. benefitted

-2-

from her time at Active Healing and that some of her teachers
adopted certain techniques used by the Active Healing staff.
Unfortunately, D.T. had an episode of seizures in the winter of
2001 which caused her to regress and lose many of her previously
learned skills.  All of the parties stipulate that Active Healing
is not a state-approved special education program and Goodchild
has no license, training or certification in special education or
related fields.

In the fall of 2002, Goodchild met with D.T. and her special
education team to devise an educational and developmental plan.
The team agreed that Goodchild would perform a series of
assessments, which Goodchild did.  On December 10, 2002, the
School District notified Spellman that it would not provide a
trial period for Goodchild's interventions because Goodchild is
not certified to provide therapeutic services, the program does
not use standardized assessment tools and it was unable
independently to verify Goodchild's assertion that D.T. was
improving through her time at Active Healing.  Nevertheless, D.T.
once again attended Active Healing's summer program during the
summer of 2003.

On June 8, 2004, Spellman partially rejected an
individualized education plan ("IEP") that was drafted by the
plaintiff School District.  Spellman, believing that D.T.
benefitted greatly from her time at Active Healing, requested

-3-

that the School District pay for D.T. to attend an extended
evaluation at Active Healing during the academic year.
Plaintiff, believing that D.T. does not benefit greatly from
Active Healing and that perhaps some of the techniques used by
Active Healing staff are actually harmful, declined Spellman's
request.  Spellman filed a hearing request with the Bureau and in
August, 2004, and February, 2005, the Bureau conducted
administrative due process hearings related to Spellman's request
for the additional services.  On April 4, 2005, the Bureau
ordered the plaintiff School District to provide for D.T. to
attend Active Healing for a 12-week evaluation period.

On May 4, 2005, the School District brought this action
seeking judicial review and reversal of that order, a declaration
relieving them of programmatic and fiscal responsibility
regarding Active Healing and other relief as deemed appropriate
by this Court.  In support of its request for relief, the
plaintiff contends that the Bureau's decision is 1) incorrect as
a matter of law, 2) unsupported by a preponderance of the
evidence, 3) arbitrary and capricious and 4) unwarranted by the
facts on record.

**B.    Procedural History**

The School District filed a motion for summary judgment on
February 28, 2006.  On April 7, 2006, the Bureau and the MDE
informed the Court that they would not file an opposition to that

-4-

motion.  On that same day, defendant Spellman filed an opposition
to the School District's motion for summary judgment.  That
opposition was filed one week after the date specified in the
scheduling order.  The School District subsequently filed a
motion to strike Spellman's opposition.

## II.  Plaintiff's Motion to Strike Defendant's Opposition to Motion for Summary Judgment

### A.  Legal Standard

Rule 16(f) of the Federal Rules of Civil Procedure provides
that if a party or a party's attorney fails to obey a scheduling
order, the Court, upon motion, may make such orders for sanctions
as are just.  See Fed. R. Civ. P. 16(f).  Moreover, the Court may
order "in lieu of or in addition to any other sanction" that the
party or the party's attorney

> pay the reasonable expenses incurred because of any
> noncompliance with this rule, including attorney's fees,
> unless the judge finds that the noncompliance was
> substantially justified or that other circumstances make an
> award of expenses unjust.

Id.

### B.  Analysis

The School District argues that Spellman's opposition to its
motion for summary judgment was filed after the Court-imposed
deadline for such motions.

At a scheduling conference, the Court set February 28, 2006,
as the date by which the School District was to file dispositive

-5-

motions and March 31, 2006, as the date by which defendants were to file their responses. The School District filed its motion for summary judgment on February 28, 2006. On March 29, 2006, the Bureau filed a motion for an extension of time to file its opposition which the Court allowed. Defendant Spellman did not file for an extension of time and then filed her opposition on April 7, 2006, seven days after the deadline.

Spellman has given this Court no reason to explain her tardiness and has not responded to the School District's motion to strike. Despite her disregard of the Court's scheduling order, an important goal is to resolve a case on its merits, see KPS & Assoc., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 13 (1st Cir. 2003), something the Court cannot do without Spellman's opposition.[1] Thus, the Court will not strike Spellman's opposition brief.

The School District also argues that, even failing to strike the entire opposition, the Court should strike those portions of Spellman's opposition that assert and argue facts not contained within the administrative record. The School District takes particular issue with Spellman's reference to 1) events that occurred after the hearing and 2) settlement discussions prior to the filing of the administrative appeal.

---

[1] Spellman's opposition takes on even greater importance in light of the decision of the Bureau and the MDE not to respond to the School District's motion for summary judgment.

-6-

The IDEA provides that in actions involving appeals from administrative decisions, federal district courts 1) shall receive the records of the administrative proceedings, 2) shall hear additional evidence at the request of a party and 3) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.  20 U.S.C. § 1415(i)(2)(C).  Here, Spellman never requested in her Joint Statement made pursuant to Fed. R. Civ. P. 16(b) or at the Scheduling Conference that the Court hear evidence in addition to that contained in the administrative record.  When she proffered facts outside the administrative record, she failed to do so in conformity with Fed. R. Civ. P. 56(c) and (e).  Moreover, evidence of settlement negotiations is generally inadmissible. See Hiram Ricker & Sons v. Students Int'l Meditation Soc'y, 501 F.2d 550, 553 (1st Cir. 1974).

In light of the foregoing, the Court will not consider any information in Spellman's opposition relating to settlement negotiations, and in that limited respect, the School District's motion to strike will be allowed.  With respect to the remaining information in Spellman's opposition that is not part of the administrative record, the Court will deny the School District's motion to strike but simply afford it minimal consideration.

-7-

### III. **Plaintiff's Motion for Summary Judgment**

#### A.    **Legal Standard**

The role of summary judgment is "to pierce the pleadings and
to assess the proof in order to see whether there is a genuine
need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 50
(1st Cir. 1990).  The movant has the burden to show "that there
is no genuine issue as to any material fact and that the moving
party is entitled to a judgment as a matter of law."  Fed. R.
Civ. P. 56(c).  A fact is material if it "might affect the
outcome of the suit under the governing law", Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), but "factual
disputes that are irrelevant or unnecessary will not be counted."
Id.  A genuine issue of material fact exists where the evidence
with respect to the material fact in dispute "is such that a
reasonable jury could return a verdict for the nonmoving party."
Id.

Once the movant has satisfied its burden, the burden shifts
to the opposing party to set forth specific facts showing that
there is a genuine, triable issue.  Celotex Corp. v. Catrett, 477
U.S. 317, 324 (1986).  The Court must view the entire record in
the light most hospitable to the nonmovant and indulge all
reasonable inferences in that party's favor.  O'Connor v.
Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  If after viewing the
record in the nonmovant's favor the Court determines that no

-8-

genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

**B.   Discussion**

The plaintiff's motion for summary judgment is premised on four interrelated arguments: 1) Goodchild and the overall program of Active Healing lack the requisite qualifications and certifications, 2) there is no credible evidence proving that D.T. actually benefitted from her experiences at Active Healing, 3) the Bureau's order was based on irrelevant facts and errors of law and 4) decisions of educational methodology are to be decided in favor of the School District.  The scope of the Court's review of the Bureau's decision, as well as the arguments offered by the plaintiff, are analyzed below.

**1.   Standard of Review**

Pursuant to 20 U.S.C. § 1415(i)(2)(C), this Court's decision shall be based upon a "preponderance of the evidence" after consideration of the administrative record.  The appropriate standard of review has been described as "intermediate ... requir[ing] a more critical appraisal of the agency determination than clear-error review entails, but ... fall[ing] well short of complete <u>de novo</u> review".  <u>Lenn</u> v. <u>Portland Sch. Comm.</u>, 998 F.2d 1083, 1086 (1st Cir. 1993) (citations omitted).  The reviewing judge is to accord the administrative proceedings "due weight"

-9-

and "is not at liberty either to turn a blind eye to administrative findings or to discard them without sound reason". Id. at 1087 (citations omitted).

## 2.  **Legal Analysis**

The IDEA is a statute that offers aid to states in an effort "to educate children with disabilities in order to improve results for such children".  20 U.S.C. § 1400(c)(6).  More specifically, the Act promises a "free and appropriate public education" ("FAPE") that is designed to meet the "unique needs" of students with disabilities.  20 U.S.C. § 1400(d)(1)(A).  The regulations promulgating the IDEA define FAPE to include educational services that 1) are free and under public direction, 2) meet state standards, 3) include preschool, elementary, middle and high school and 4) are provided in accord with an individualized education program (IEP).  34 C.F.R. § 300.13.

The primary means by which states provide a FAPE to their students with disabilities is through the creation, implementation and consistent monitoring of IEPs.  See 20 U.S.C. § 1414(d).  IEP teams, of which the parents of the disabled child are members, see 20 U.S.C. § 1414(d)(1)(B)(i), must consider in crafting the IEP: 1) the strengths of the child, 2) the concerns of the parents for bettering the education of their child, 3) the results of clinical evaluations and 4) the academic, developmental and functional needs of the student.  20 U.S.C.

-10-

§ 1414(d)(3)(A).

In addition to those procedural requirements, states must
also ensure that the providers of special education services are
"appropriately and adequately prepared and trained, including
that those personnel have the content knowledge and skills to
service children with disabilities."  20 U.S.C. § 1412(a)(14)(A).
The Act further clarifies that such personnel must have
qualifications that

> are consistent with any State-approved or State-recognized
> certification, licensing, registration, or other comparable
> requirements that apply to the professional discipline in
> which those personnel are providing special education or
> related services.

20 U.S.C. § 1412(a)(14)(B)(i).  It is clear from the language of
the regulations promulgated under the Act that the phrase "other
comparable requirements" includes only those requirements made
official by the state or authorized state agency.  34 C.F.R.
§ 300.136(a)(4).

The IDEA allows for paraprofessionals and assistants to
assist schools in fulfilling the goals of the Act.  34 C.F.R.
§ 300.136(f).  Those individuals can provide "developmental,
corrective and other support services as are required to assist a
child with a disability to benefit from special education".  34
C.F.R. § 300.24(a).[2]  Specific examples of such services are

---

[2] The Commonwealth of Massachusetts has adopted this
definition.  See 603 C.M.R. 28.02.

-11-

physical and occupational therapy, orientation and mobility services and speech-language therapy. Id. All such services must be provided by "qualified personnel", defined as those individuals who have state-approved or state-recognized certification, licensure, registration or other comparable requirements, see 34 C.F.R. § 300.23, and they must be "appropriately trained and supervised, in accordance with State law, regulations, or written policy". 34 C.F.R. § 300.136(f). See also 20 U.S.C. § 1412(a)(14)(B)(iii) (directing that such personnel must be "appropriately trained and supervised, in accordance with State law, regulation, or written policy" as a prerequisite to being allowed to "assist in the provision of special education and related services ... to children with disabilities.").

In the instant case, the School District's motion for summary judgment is based in large part on the notion that Active Healing is not a state-approved program and Goodchild is not adequately certified or trained to work with children with disabilities. While this contention is initially persuasive, upon closer examination it loses its appeal.

First, while Goodchild himself may not be trained or certified within the meaning of the IDEA, a jury could find that his staff is so qualified. Goodchild employs a doctor, a psychologist and a public school teacher, all of whom have

-12-

professional training and experience working with children with disabilities. Merely because Goodchild himself may not have the requisite certification does not automatically disqualify his group from eligibility as providers of special education services.

It is similarly unclear whether summary judgment for the School District is warranted on account of the fact that Active Healing is not an approved or accredited program. Massachusetts law suggests that public schools can place special education students only in state-approved educational settings. See M.G.L. c. 71B, § 10. However, the state administrative regulations clearly provide that placement at approved schools or programs is desirable but that in certain cases (i.e., where no state-approved school or program exists that would appropriately serve the student), placement at non-approved schools or programs is permitted. See 603 C.M.R. 28.06(3)(e) (describing procedural requirements that the state or local educational agency must fulfill before placement in a non-approved school). Moreover, a federal district court in New York characterized IDEA's approval requirement as both procedural (i.e., the school must be approved by the state) and substantive (i.e., the student has a right to a FAPE whether or not the alternative placement is approved) and that the substantive component is the more important and takes primacy when the two statutory provisions conflict. Connors v.

-13-

Mills, 34 F. Supp. 2d 795, 803 (N.D.N.Y. 1998).

Based on the foregoing analysis, this Court concludes that a reasonable juror could find that the overall program and staff at Active Healing had the requisite qualifications and certifications required under the IDEA and federal and state regulations that require services and evaluations by "qualified personnel".

The School District also takes issue with the Bureau's decision in light of the fact that there was no credible evidence of a meaningful benefit derived from D.T.'s participation at Active Healing. As the party requesting the Bureau hearing, Spellman had the burden of proof. See Schaffer v. Weast, -- U.S. --, --, 126 S.Ct. 528, 534 (2005)(stating party challenging IEP has burden of proof at hearing). The School District argues that Spellman was not able to demonstrate to the Bureau that Active Healing was an appropriate program that benefitted D.T.

An IEP must be reasonably calculated to provide effective results and demonstrable improvement in the educational and personal skills identified as special needs. See Lenn, 998 F.2d at 1090. Contrary to the School District's assertions, the Bureau was presented with information that indicated that D.T. had previously benefitted from Active Healing's services in the past such as 1) the progress report of the School District's physical therapist, Jennifer Gallant, 2) documentation presented

-14-

by Goodchild on D.T.'s progress, 3) a letter submitted by D.T.'s pediatrician, Karl Kuban, and 4) a letter from D.T.'s educational aide, Kathryn Cushna. Moreover, it was within the Bureau's authority to order additional evaluations, in this case through a 12-week trial program, to determine definitively whether Active Healing's program was providing any measurable benefit to D.T.

In another line of attack on the administrative appeal, the School District submits that the Bureau's order was based on irrelevant facts and errors of law. For example, the School District strenuously objects to the Bureau's reference to the District's past funding of Active Healing for summer programs as an "endorsement" of the program as a component of the regular school year. Although the School District employs different criteria in deciding the fitness of special education programs for the extended school year and the regular school year itself, it was not inappropriate for the Bureau to consider that relationship as one factor among many in determining whether an extended evaluation with Active Healing was appropriate.

The Bureau did, however, misapply the law in one respect when it noted that the School District had not offered evaluations of its own to show that Active Healing was inappropriate for D.T. Under Schaffer v. Weast, the Supreme Court recently made it clear that the party challenging an IEP has the burden of proof at the administrative hearing. In this

-15-

case, Spellman was the challenging party and the School District was therefore under no obligation to demonstrate that Active Healing was inappropriate. On the contrary, Spellman had the burden of demonstrating its appropriateness.

Nevertheless, for two reasons, the legal error is harmless. First, the Supreme Court did not issue its opinion in Schaffer until November, 2005, more than eight months after the Bureau's published order in this matter. Second, even if the Bureau misplaced the burden, a jury could still readily find that Active Healing is an appropriate program for inclusion in D.T.'s IEP.

Ultimately, the Bureau's "highly unusual" decision to sanction an unapproved program such as Active Healing was, as it determined, "dictated by the unique circumstances of this case." The Bureau did not order the School District to pay for D.T.'s participation at Active Healing on a permanent basis but, rather, ordered a 12-week trial program in the nature of an extended evaluation.[3] That evaluation was intended to determine, once and for all, what benefit, if any, was conferred on D.T. by her participation in Active Healing. Based on the evidence presented to it, the Bureau's decision was not clearly erroneous. Finding

_____

[3] The School District contends that the Bureau's order is also in error because an "extended evaluation ... shall not exceed eight school weeks." 603 C.M.R. 28.05(2)(b)(4)(emphasis added). The statute is silent, however, on the issue of an evaluation that begins during the school year and carries over into the summer.

genuine issues of material fact, this Court will leave the
decision to a jury's reasoned verdict and, therefore, summary
judgment will be denied.

## ORDER

In accordance with the foregoing, Plaintiff's Motion to
Strike Opposition to Motion for Summary Judgment (Docket No. 26)
is, insofar as Spellman included information relating to
settlement negotiations, **ALLOWED**, but is, in all other respects,
**DENIED**. Plaintiff's Motion for Summary Judgment (Docket No. 15)
is **DENIED**.

So ordered.

Nathaniel M. Gorton
United States District Judge

Dated September 27, 2006

-17-