```
                    United States District Court
                      District of Massachusetts
_____
                               )
MANCHESTER-ESSEX REGIONAL SCHOOL)
DISTRICT SCHOOL COMMITTEE,     )
          Plaintiff,           )
                               )
     v.                        )
                               )    Civil Action No.
BUREAU OF SPECIAL EDUCATION    )    05-10922-NMG
APPEALS OF THE MASSACHUSETTS   )
DEPARTMENT OF EDUCATION,       )
MASSACHUSETTS DEPARTMENT OF    )
EDUCATION, AND PATRICIA SPELLMAN)
AS PARENT AND NEXT FRIEND OF   )
D.T.,                          )
          Defendants.          )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

On May 4, 2005, the Manchester-Essex Regional School District School Committee ("the School District" or "the plaintiff") filed a complaint in this Court against the Bureau of Special Education Appeals ("the Bureau"), the Massachusetts Department of Education ("MDE") and Patricia Spellman ("Spellman"), the mother of D.T., a student in the plaintiff's School District. The complaint alleged that the Bureau violated the Individuals with Disabilities Education Act ("IDEA" or "the Act"), 20 U.S.C. § 1400 et seq., when it ordered the School District to pay for D.T. to attend a special education program for a 12-week extended evaluation. The School District sought,

-1-

among other things, a reversal of the Bureau's order.

On September 27, 2006, the Court issued a Memorandum and Order that: 1) allowed the plaintiff's motion to strike the opposition to its summary judgment motion only insofar as it discusses information outside of the administrative record and 2) denied the plaintiff's motion for summary judgment.  The plaintiff then filed a motion to reconsider the denial of summary judgment, contending that the Court had erroneously applied the traditional summary judgment standard rather than treat the motion as an appeal from the administrative decision.[1]  On December 18, 2006, the Court allowed the plaintiff's motion to reconsider.

## I.   Background

At the time of the Bureau's order in 2005, D.T. was an eleven-year-old student who suffered from a chromosomal abnormality known as Wolf-Hirschorn Syndrome.  D.T. suffers from severe cognitive and mobility impairments, requires nutritional assistance via a G-tube and cannot speak, although through vocalization she can convey pleasure or discomfort.  Her educational and developmental progress since entering school have

---

[1] The motion to reconsider (and the Court's allowance thereof) relates to the plaintiff's motion for summary judgment only.  Therefore, there is no discussion here about the plaintiff's other motion to strike Spellman's opposition to the motion for summary judgment.

been slow.  At all times relevant to this litigation, D.T. was a special education student at Essex Elementary and Middle School.

Beginning in 2000 after D.T.'s kindergarten year, the School District paid for D.T. to attend Active Healing, a special education program, for seven weeks each summer.  Active Healing, run by Sargent Goodchild ("Goodchild"), provides developmental and cognitive assistance to children with learning disabilities and/or brain damage.  There is some evidence in the record suggesting that D.T. benefitted from her time at Active Healing and that some of her teachers adopted certain techniques used by the Active Healing staff.  Unfortunately, D.T. had an episode of seizures during the Winter of 2001 which caused her to regress and lose many of her previously learned skills.  All of the parties stipulate that Active Healing is not a state-approved, special education program and that Goodchild has no license, training or certification in special education or related fields.

In the Fall of 2002, Goodchild met with D.T. and her special education team to devise an educational and developmental plan.  The team agreed that Goodchild would perform a series of assessments, which Goodchild did.  On December 10, 2002, the School District notified Spellman that it would not provide a trial period for Goodchild's interventions because Goodchild is not certified to provide therapeutic services, the program does not use standardized assessment tools and it was unable to verify

independently, Goodchild's assertion that D.T. was improving as a result of her time at Active Healing. Nevertheless, D.T. once again attended Active Healing's program during the Summer of 2003.

On June 8, 2004, Spellman partially rejected an individualized education plan ("IEP") that was drafted by the plaintiff School District. Spellman, believing that D.T. benefitted greatly from her time at Active Healing, requested that the School District pay for D.T. to attend Active Healing during the academic year for an "extended evaluation". The plaintiff, believing that D.T. does not benefit from Active Healing and that perhaps some of the techniques used by Active Healing staff are actually harmful, declined Spellman's request. Spellman filed a hearing request with the Bureau and on August 24, 2004, and again on February 23, 2005, the Hearing Officer Sara Berman ("the Hearing Officer") conducted hearings related to Spellman's request for the additional services. On April 4, 2005, the Bureau ordered the plaintiff School District to pay for D.T. to attend Active Healing for a 12-week evaluation period.

On May 4, 2005, the School District brought this action seeking judicial review and reversal of that order, a declaration relieving them of programmatic and fiscal responsibility with respect to Active Healing and other relief as deemed appropriate by this Court. In support of its request for relief, the

plaintiff contends that the Bureau's decision is 1) incorrect as a matter of law, 2) unsupported by a preponderance of the evidence, 3) arbitrary and capricious and 4) unwarranted by the facts on record.

## II.  Motion for Summary Judgment

### A.  Standard of Review

A motion for summary judgment in the context of an action brought under the IDEA requires a different standard of review than the traditional summary judgment standard.  Courts have grappled with the predicament of forcing the IDEA statutory scheme into the Federal Rules of Civil Procedure and recognize that "[t]hough the parties may call the procedure a 'motion for summary judgment' ... the procedure is in substance an appeal from an administrative determination, not a summary judgment." Capistrano Unified School District v. Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995); see also Lillbask ex rel. v. Connecticut Department of Education, 397 F.3d 77, 83 n.3 (2d Cir. 2005).

The statute provides that in an appeal from an administrative decision, a federal district court:

> (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(B).  Accordingly, the reviewing court

applies "an intermediate standard of review[,] ... a standard which, because it is characterized by independence of judgment, requires a more critical appraisal of the agency determination than clear-error review entails, but which, nevertheless, falls well short of complete de novo review." Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1086 (1st Cir. 1993).

In recognition of the administrative agency's expertise, a federal district court's review of its findings must be "thorough yet deferential". Kathleen H. v. Mass. Dep't of Educ., 154 F.3d 8, 13 (1st Cir. 1998)(quotation omitted). After such consideration, the court is free to accept or reject the findings in part or in whole. Town of Burlington v. Dep't of Educ., 736 F.2d 773, 792 (1st Cir. 1984). In contrast to the deferential treatment of factual findings, the agency's legal conclusions are subject to de novo review. Ross v. Framingham Sch. Comm., 44 F. Supp. 2d 104, 111 (D. Mass. 1999).

**B.   Discussion**

The plaintiff School District raises numerous objections to the Hearing Officer's decision directing School District to arrange for and fund a 12-week trial period for D.T. at Active Healing. In large part, the School District challenges the Hearing Officer's decision to require the acquisition of services from a program that is not state-approved to be performed by a provider who is neither certified nor trained to work with

disabled children. In her decision, the Hearing Officer acknowledged that the order was "highly unusual" but found that the particular circumstances of this case, including the School's prior endorsement of the unapproved program and the parent's reliance thereon, weighed in favor of the order of a 12-week trial period.

### 1. Statutory Framework

The Court begins by reviewing the statute. The IDEA is a statute that offers aid to states in an effort "to educate children with disabilities in order to improve results for such children". 20 U.S.C. § 1400(c)(6). More specifically, the Act promises a "free and appropriate public education" ("FAPE") that is designed to meet the "unique needs" of students with disabilities. 20 U.S.C. § 1400(d)(1)(A). The regulations promulgating the IDEA define FAPE to include educational services that 1) are free and under public direction, 2) meet State standards, 3) include preschool, elementary, middle and high school and 4) are provided in accordance with an individualized education program ("IEP"). 34 C.F.R. § 300.13.

The primary means by which states provide a FAPE to their students with disabilities is through the creation, implementation and consistent monitoring of IEPs. See 20 U.S.C. § 1414(d). IEP teams, of which the parents of the disabled child are members, see 20 U.S.C. § 1414(d)(1)(B)(i), must consider in

crafting the IEP: 1) the strengths of the child, 2) the concerns of the parents for bettering the education of their child, 3) the results of clinical evaluations and 4) the academic, developmental and functional needs of the student.  20 U.S.C. § 1414(d)(3)(A).

In addition to those procedural requirements, States must also ensure that the providers of special education services are "appropriately and adequately prepared and trained, including that those personnel have the content knowledge and skills to service children with disabilities."  20 U.S.C. § 1412(a)(14)(A). The Act further clarifies that such personnel must have qualifications that

> are consistent with any State-approved or State-recognized certification, licensing, registration, or other comparable requirements that apply to the professional discipline in which those personnel are providing special education or related services.

20 U.S.C. § 1412(a)(14)(B)(i).  It is clear from the language of the regulations that promulgate the Act that the phrase "other comparable requirements" includes only those requirements made official by the State or authorized State agency.  34 C.F.R. § 300.136(a)(4).

The IDEA allows for para-professionals and assistants to assist schools in fulfilling the goals of the Act.  34 C.F.R. § 300.136(f).  Those individuals can provide "developmental, corrective and other support services as are required to assist a

child with a disability to benefit from special education". 34 C.F.R. § 300.24(a). Specific examples of such services are physical and occupational therapy, orientation and mobility services and speech-language therapy. Id. All such services must be provided by "qualified personnel", defined as those individuals who have State-approved or State-recognized certification, licensure, registration or other comparable requirements, see 34 C.F.R. § 300.23, and they must be "appropriately trained and supervised, in accordance with State law, regulations, or written policy". 34 C.F.R. § 300.136(f); see also 20 U.S.C. § 1412(a)(14)(B)(iii) (directing that such personnel must be "appropriately trained and supervised, in accordance with State law, regulation, or written policy" as a prerequisite to being allowed to "assist in the provision of special education and related services ... to children with disabilities.").

**2. Trial Evaluation at Active Healing**

The central issue in dispute is whether the Hearing Officer erred in requiring a 12-week extended evaluation at Active Healing, an unapproved and unaccredited program, in order to "inform the parties further on the issue of whether the Active Healing program will meet the Student's [D.T.'s] needs". Both parties stipulate and the Hearing Officer expressly recognized in her decision that Active Healing is neither an approved nor an

accredited program.  In its motion for summary judgment, the School District contends that because Active Healing is not a state-approved program and Goodchild is not adequately certified or trained to work with children with disabilities, the Hearing Officer acted contrary to state and federal law in ordering their evaluations.

In her decision, the Hearing Officer noted the "highly unusual" nature of ordering "a trial of an unapproved program such as Active Healing" but stated that such an order was required by the particular facts of the case.  Specifically, the Hearing Officer identified two issues in the case that necessitated the exception: 1) all of the parties, including the School District, recognize that the D.T. has regressed and/or made minimal progress with the IEPs and placements since 2001 and 2) the School District has paid for summer programming at Active Healing and accepted training and/or consultation from Sargent Goodchild.  Based on those two facts, the Hearing Officer concluded that it would be "manifestly unfair to penalize Spellman now for relying on the School's longstanding endorsement of the Active Healing program ... particularly where the School had not offered other extended year services ...."

Although the Court recognizes the sincere effort of the Hearing Officer to confront this difficult case, it concludes that both state and federal law require a different outcome.  The

Hearing Officer identified the issue as:

> Whether Manchester-Essex must provide Student with several hours per week of the Active Healing program during the 2004-5 school year in order to provide her with a free, appropriate public education.

The Hearing Officer's response to that question was to order a 12-week extended evaluation at Active Healing. While a Hearing Officer is permitted to "order additional evaluations by the school district ... at public expense when necessary", 603 C.M.R. 28.08(5)(c), this is not a case in which such an order was necessary. State and federal law compel a different response.

Both state and federal regulations address the issue of whether a School District can be required to provide services from an unaccredited and unapproved school or program and, except in particular situations, the answer is "no". The IDEA requires that educational services be provided by "qualified personnel." 20 U.S.C. § 1412(a)(14)(A). Federal regulations define "qualified personnel" as:

> personnel who have met [State Educational Agency]-approved or [State Educational Agency]-recognized certification, licensing, registration, or other comparable requirements that apply to the area in which the individuals are providing special education or related services.

34 C.F.R. § 300.23. Massachusetts regulations outline a process and means by which public and private day and residential special education school programs are able to receive approval from the state Department of Education. 603 C.M.R. 28.09. Furthermore, state law provides that public schools can only place special

-11-

education students in State-approved educational settings. See Mass. Gen. Laws. ch. 71B, § 10. The requirement is intended to protect and serve the best interest of the child and parent as well as to safeguard the School District's resources and prevent the funding of an inappropriate educational program.

One exception to the federal requirement is in cases where a parent unilaterally places a child in a program because the school has not offered an appropriate IEP. See 20 U.S.C. § 1415(d)(2)(G). In such cases, the parent is entitled to reimbursement from the school district, regardless of whether the program was state-approved. The Hearing Officer analogized the present situation to such a case and concluded that because unilateral placement cases merit reimbursement where a program is "appropriately responsive to [a student's] special needs", the focus in the hearing should likewise be about the responsiveness of Active Healing. Accordingly, the Hearing Officer ordered additional evaluations to make that determination.

The Court finds that the example of a unilateral placement is inappropriate here. In this case, the School District and the parent had created annual IEPs and both recognized that D.T.'s current IEP demanded major modifications and accommodations given her regression and/or minimal progress since 2001. The Hearing Officer noted that the School District had explored alternative placements to supplement the current IEP. This is not a case in

which an IEP was lacking or clearly inappropriate. Rather, here the parent and the School District disagreed about the inclusion of a specific program on the basis that it was unapproved, unaccredited and lacked sufficient assessment by a properly credentialed professional to demonstrate benefit.

As a matter of law, the School District was entitled to refuse the unapproved and unaccredited program for D.T.'s IEP. The issue before the Hearing Officer was not whether the Active Healing program provided D.T. with a FAPE but rather whether the School District was <u>required</u> to include it within the IEP despite the fact that Active Healing was not properly accredited under Massachusetts law.  See <u>T.R.</u> v. <u>Kingwood Tp. Bd. of Educ.</u>, 205 F.3d 572, 580 (3rd Cir. 2000).  This Court's reading of the federal and state regulations leads it to conclude that the School District was not required to do so.  The Hearing Officer erred, therefore, in requiring additional evaluations.  No such evaluation was required in this case and the order to conduct one in contravention of the conclusion of the School District was contrary to state and federal law.

**ORDER**

For the foregoing reasons, the School District's Motion for Summary Judgment (Docket No. 15) is **ALLOWED**.

**So ordered.**

                                     /s/ Nathaniel M. Gorton
                                     Nathaniel M. Gorton
                                     United States District Judge

Dated: May 9, 2007